IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CAMPBELL TIU CAMPBELL, INC. | Case No. 06-9872 |
| Debtor. | Honorable Jacqueline Cox |

### AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL OF CITIBANK, F.S.B.

This cause coming on to be heard for hearing upon the Motion to Use Cash Collateral filed by Campbell TIU Campbell (Debtor), due notice having been given to all those entitled thereto, and the Court being fully advised in the premises, the Debtor and Citibank, F.S.B. (Lender) stipulate as follows:

1. On August 15, 2006, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor continues to operate its business and manage its affairs as Debtor In Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. On July 2, 2003, the Borrower executed and delivered to Lender a Revolving Line of Credit Note in the principal sum of Seven Hundred Fifty Thousand 00/100 Dollars ($750,000.00), and any and all renewals and modifications thereof ("Line of Credit Note").

4. The Borrower owes Lender the unpaid principal balance in the sum of One Hundred Fifty One Thousand Two Hundred Fifty and 99/100 Dollars ($151,250.99), plus interest of $1,546.94, late charges of $26,029.47, and advances of $1,931.00, for a total amount of $180,758.40 through August 11, 2006, plus accrued interest, attorneys' fees and court costs.

5. The Line of Credit Note and all documents executed and delivered by the Debtor to the Lender are herein collectively referred to as the "Loan Documents".

6. Lender has a valid and perfected blanket first priority lien and security interest upon all of the Debtor's assets, including, but not limited to, all of the personal property and fixtures of the Debtor, wherever located and whether now owned or hereafter acquired or created, of every kind and description, tangible or intangible, including without limitation, all inventory, equipment, farm products documents, instruments, chattel paper, accounts, contract rights and general intangibles, and all accessions to, and replacements, substitutes, proceeds and products of the foregoing, in any form whatsoever (all of the foregoing collectively referred to as "Collateral").

7. The monies collected by the Debtor in connection with the Collateral and used by the Debtor are subject to the security interest and rights of Lender and are cash collateral as that term is defined by 11 U.S.C. Section 363(a). The Debtor requires the use of the cash collateral and requests authorization of this Court to utilize the cash collateral pursuant to the provisions of Section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's anticipated expenses is attached hereto as Exhibit A.

8. Due to the limitations imposed by Section 363(c) of the Bankruptcy Code of the use of cash collateral, the Debtor currently does not have sufficient funds to meet current expenses and to maintain an acceptable level of business activity for even a short period of time until it can generate an adequate cash flow.

9. The Debtor is unable, pursuant to Section 364 of the Bankruptcy Code, to obtain unsecured credit.

10. In order to prevent a severe disruption in the operation of its business, which would threaten the continuation of the Chapter 11 case and diminish the chances for a successful reorganization to the detriment of the Debtor and the creditors of this estate, the Debtor herewith seeks authority to use the cash collateral in which Lender holds a pre-petition security interest on

an interim basis without prejudice to the Debtor or Lender.

11. Lender has indicated a willingness to consent to the Debtor's use of cash collateral generated from the Collateral provided that Lender is granted replacement liens, excluding avoidance actions under 11 U.S.C. Sections 510 and 544 through 551, if any, upon the assets in Debtor's possession subsequent to the filing of the Chapter 11 petition to the extent of the collateral utilized, subject to verification of the extent and validity of the liens. In addition, as adequate protection, Debtor proposes to make monthly adequate protection payments to Lender in the amount of $1,567.71, plus a percentage of certain accounts receivable collected, under the Line of Credit Note, and grant Lender a replacement lien upon the proceeds from assets Debtor acquires subsequent to the filing of the Chapter 11 petition, excluding avoidance actions under 11 U.S.C. Sections 510 and 544 through 551, if any, to the extent that the collateral is utilized subject to verification of the extent and validity of the lien.

IT IS HEREBY ORDERED THAT:

(a) The paragraphs contained in the preamble to this Order are incorporated herein by this reference and the Debtor and Lender consent and stipulate to the entry of this Order.

(b) For purposes of this Order, the term "Cash Collateral" shall mean and include cash arising from the collection or other conversion to cash of pre-petition or post-petition assets of the Debtor in which Lender has a security interest, whether such security interest existed as of the commencement of this case or arises thereafter, and whether such assets converted to cash existed as the petition date.

(c) Debtor is hereby authorized to use Lender's cash collateral on an interim basis pending a final hearing and approval pursuant to Section 363(c) of the Bankruptcy Code provided, however, that (i) cash collateral shall not be used for expenses other than those post-petition obligations on the budget, plus no more than ten percent (10%) of the total proposed expenditures

except if otherwise agreed by the Lender, a copy of which is attached hereto as Exhibit "A", and (ii) no payroll payments shall be made without simultaneous tax deposits being made in an amount equal to the applicable withholding and social security taxes for each employee.

(d)     Except as otherwise provided in this Order, Debtor shall use the cash collateral solely for payment of its post-petition obligations and indebtedness in the ordinary course of its business operations, unless otherwise ordered by the Court after timely written notice to the Lender.

(e)     Debtor shall deposit all monies collected in connection with the Collateral, whether generated pre-petition, or post-petition in its Debtor in Possession account at Lender.

(f)     Debtor is hereby ordered and directed to pay Lender monthly payments in the amount of $1,567.71 on the twentieth day November, 2006, plus 55 percent of any monies received by the Debtor in connection with account receivables due from Goody Clancy & Associates, Bronzeville Childrens' Museum, and United Airlines. The Debtor is prohibited from paying any independent contractors without the consent of the Lender or further Order of Court notwithstanding anything contained in the Budget.

(g)     Lender shall have no obligation to disburse monies from the Debtor In Possession account if the effect of any such disbursement would be to create an overdraft in the Debtor In Possession account.

(h)     The provisions of this Order, which shall be immediately effective upon entry of this Order, and any actions taken pursuant hereto, shall survive entry of and shall govern with respect to any conflict with any order which may be entered confirming any Plan of Reorganization (including utilization of any cram-down provisions) or which may be entered converting these Proceedings from Chapter 11 to Chapter 7, and the terms and provisions of this Order, as well as the lien and security interest created hereunder and all rights of Lender and obligations of the

Debtor created or arising pursuant hereto, shall continue in these proceedings or any superseding proceeding under the Code, and such liens and security interests shall maintain their priority as provided by this Order until satisfied and discharged. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court, such stay, modification or vacation shall not affect: (i) the validity of any debt to Lender incurred pursuant to this Order and which is incurred prior to the effective date of such stay, modification or vacation; (ii) the validity and enforceability of any lien or priority authorized hereby with respect to any such debt to Lender; and (iii) the conduct of Lender with respect to the rights granted to Lender in this Order and the Loan Documents prior to the effective date of such stay, modification or vacation. Notwithstanding such stay, modification or vacation, all liabilities owed to Lender by Debtor pursuant to this Order prior to the effective date of such modification, stay or vacation, to or for the benefit of Debtor shall be governed in all respects by the original provisions of this Order and Lender shall be entitled to all of the rights, privileges and benefits, including the security interest in the priority granted herein, with respect to all such liabilities and the course of conduct established in connection therewith.

(i)    The Debtor shall provide bi-weekly financial reports to Lender by the Monday following the end of each bi-weekly period commencing with the week ending October 27, 2006, and monthly financial reports within seven (7) days after the end of each such monthly period commencing with the monthly period ending October 31, 2006, which reports shall include the following: all income, expenses and disbursements; balance sheet; accounts receivable and accounts payable list and aging; a comparative analysis with the Budget attached hereto as Exhibit A; and any other financial information which may be reasonably requested by Lender or its representative; and other reporting requirements necessary to implement the terms of this Order, including copies of all Court reports filed.

(j) The Debtor hereby assumes, affirms, confirms and ratifies the Loan Documents provided to Lender, and the Debtor is hereby ordered and directed to execute any additional and supplemental documents as Lender may reasonably request, unless otherwise ordered by the Court after timely written notice to the Lender.

(k) Debtor is hereby ordered and directed to insure the Collateral against risk of loss, damage and destruction for the full replacement value thereof with an insurance company acceptable to Lender and with loss payable to Lender and provide evidence of same to Lender.

(l) Lender shall have the right to inspect the premises, property, assets and collateral of the Debtor, and conduct audits and inspections of the books and records of the Debtor during regular business hours.

(m) The provision of this Order shall be binding upon and inure to the benefit of Lender, and Debtor, retroactive as of the date of the initiation of these proceedings.

(n) This Order is without prejudice to the rights of Lender to receive any pre-petition or post-petition payments due Lender or to seek modification of the terms hereof at any time reasonable notice to all parties in interest.

(o) The Debtor and Lender agree that this Agreed Order shall in no way prejudice Lender's rights, including, but not limited to, Lender's rights at any time to seek relief from the automatic stay on any legal or equitable grounds (including the absence of adequate protection) and, in the event of any default by the Debtor pursuant to this Agreed Order, to seek an order prohibiting the Debtor from using the Collateral or vacating, modifying or terminating this Agreed Order.

(p) The occurrence of any one or more of the following shall constitute an event of default:

    (1) this Agreed Order is stayed, reversed, vacated or modified on appeal or

6

shall cease to be in full force and effect;

(2) the material failure by the Debtor to perform any of its obligations under this Agreed Order and failure to cure the default within ten (10) days after receipt of written notice of the default via email transmission to Debtor and Debtor's counsel;

(3) the Debtor's expenditure of any expenses not included in the Budget, or the expenditure of any item in the Budget by more than ten percent (10%) of the amount included in the Budget

(4) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(5) the appointment of a Chapter 11 Trustee; or

(6) the dismissal of the Debtor's bankruptcy case.

(q) Upon Lender's claim that the Debtor has failed to perform in accordance with the terms of this Order, the Debtor's right to use of Cash Collateral pursuant to this Agreed Order shall immediately terminate after written notice to the Debtor and its counsel, and Lender may petition the Bankruptcy Court for relief from the automatic stay to exercise any and all rights and remedies it may have with respect to the Collateral or for other appropriate relief.

(r) Debtor's authorization for the use of Cash Collateral pursuant to this Agreed Order shall terminate on the earlier of (a) the entry of a Court order denying approval of this Agreed Order; or (b) the Effective Date under the Plan of Reorganization to be proposed by the Debtor and confirmed by final order of the Bankruptcy Court; (c) the occurrence of an event of default herein; (d) the conversation of this case to one under Chapter 7; (e) November 30, 2006; or (f) such later date as Lender or the Debtor may hereafter specify in writing.

(s) Nothing in this Order shall in any way restrict the scope or priority of Lender's pre-petition liens, security interests or claims, which liens and security interest are valid, perfected and

7

enforceable.

(t)    In addition to its existing rights and interests, and as partial adequate protection, Lender is granted a replacement lien upon all present and future intangible, real, personal, or mixed property of the Debtor of whatever nature and type, and all products and proceeds thereof, except for avoidance actions, if any, without the filing of any further documentation. This Order shall be deemed to be and shall constitute a security agreement under the applicable provisions of the Uniform commercial Code. Lender's security interest shall be deemed perfected by the entry of this Order without the necessity of filing financing statements or taking any further action.

AGREED:

CAMPBELL TI/ CAMPBELL, INC                      CITIBANK, F.S.B.

By: _____                   By: _____
    One of its Attorneys                            One of its Attorneys

Date: October 26, 2006                          ENTER: _____J.P.Cox_____
                                                        Bankruptcy Judge

printed on 10/24/2006 at 7:42 PM        **Campbell, Tiu Campbell, Inc.**        page 1 of 2
                                        **DIP Budget**

|  |  |  | Oct 28 - Nov 30 2006 |
|---|---|---|---|
| **Starting Cash Balance** |  |  | $ 6,176.32 |
| **Opening Accounts Receivable** |  |  | $ 338,635.91 |
| **New Billings** |  |  | $9,000.00 |
| **Cash Sales (Collections)** |  |  | $188,741.27 |
| **Obligations** |  | Day due |  |
|  | Current Payables to Consultants |  |  |
|  | Folgers (pay $2,457.48 in Nov) |  | $ 2,457.48 |
|  | Milhouse Engineering |  | $ 5,000.00 |
|  | CitiBank funds collected |  | $97,287.26 |
|  | Number of payrolls in period |  | 1 |
| **USES OF CASH** |  |  |  |
| **Cost of Services** |  |  |  |
|  | **COST OF GOODS SOLD** |  |  |
|  | Direct Personnel Expense: |  |  |
| 5100 | Consultants (Post-petition) |  | $ 7,457.48 |
| 5200 | Reimbursable Expenses |  | $ 500.00 |
| 5300 | Direct Payroll |  | $ 12,782.54 |
| 5320 | Employer paid Fed/State/City Taxes |  | $ 1,156.87 |
| 5350 | "1099" Independent Contractor Labor |  | $ 5,390.00 |
| 5360 | Other COGS |  | $ - |
|  | Total COST OF GOODS SOLD |  | $ 27,286.89 |
|  | **EXPENSES** |  |  |
|  | Payments to Secured Creditor CitiBank |  | $98,426.98 |
| 6100 | Administrative Payroll |  | $ 4,665.26 |
| 6120 | Employer paid Fed/State Taxes |  | $ 502.73 |
| 6132 | Insurance - Health - Blue Cross | 1st | $ 20,217.00 |
| 6132 | Insurance - Dental - Guardian | 3rd | $ 131.07 |
| 6133 | Insurance - Life & AD&D - Met Life |  |  |
| 6140 | "1099" Temporary Administrative Help |  | $ 6,807.69 |
| 6160 | Professional Dues / Continuing Ed |  |  |
| 6210 | Rent | 1st | $ 11,000.00 |
| 6231 | Office Supplies |  |  |
| 6233 | Leased Equipment-CDS Office Systems |  | $ 900.00 |
| 6251 | Computer Software Maintenance |  |  |
| 6251 | Computer Hardware Maintenance |  | $ 775.00 |
| 6270 | Phone System Maintenance (C&C) |  | $ 1,237.60 |
| 6270 | Telecommunications |  | $ 1,800.00 |
| 6280 | Postage & Delivery |  | $ 20.00 |
| 6310 | Professional Services (Fees) |  | $ - |
| 6331 | Insurance - Professional Liability -1st Ins |  | $ 10,345.10 |

EXHIBIT A

printed on 10/24/2006 at 7:42 PM    **Campbell, Tiu Campbell, Inc.**    page 2 of 2
                                    **DIP Budget**

| | | | | Oct 28 - Nov 30 2006 |
|---|---|---|---|---|
| | 6332 | Insurance - GL/WC - AXA Life or St Paul Travellers | | $ 6,097.50 |
| | 6350 | Auto / Local Travel | | $ 200.00 |
| | 6360 | Printing - Best / Mossner | | $ 90.00 |
| | 6420 | Miscellaneous | | |
| | 6999 | Uncategorized Expenses | 18th | |
| | 8100 | Interest Expense to CitiBank | 20th | $ 1,567.00 |
| | | Quarterly Fee to the Court | | $ - |
| | | Total Expenses: | | $ 164,782.93 |
| **NET INCOME** | | | | $ (3,328.55) |
| **Ending Cash Balance** | | | | $ 2,847.76 |
| Change in Cash | | | | $ (3,328.55) |
| Ending Accounts Receivable | | | | $ 158,894.64 |
| Secured Note balance due to CitiBank | | | | $371.89 |